BRISCOE, Circuit Judge,
concurring:
I concur, but write separately to clarify why, in my view, the district court did not commit clear error in finding that M & M willfully violated the automatic stay. In its “Order On Damages,” the bankruptcy court found that “M & M had actual notice of the bankruptcy filing on May 13, 2004 when the Debtors’ attorney [Ken McCartney] spoke with Keith Smith, a vice president of M & M, and requested M & M return the repossessed Chevy.” App. at 53-54. This finding is amply supported by the testimony of Smith. Smith testified that in mid-May 2004, McCartney contacted him by telephone. Id. at 170. Smith further testified that “McCartney said that he was counsel for the Johnsons and that they were in bankruptcy,” and that McCartney “suggested] that [M & M] ... return the truck immediately to the John-sons at their address.” Id. at 171. In short, Smith acknowledged that he was advised that (a) the Johnsons had filed for bankruptcy, (b) were represented by counsel, and (c) that M & M had a legal obli *1176 gation under the Bankruptcy Code to return the truck to the Johnsons.
According to the record, Smith chose not to believe McCartney for two reasons. First, Smith testified he was aware “that the Johnsons had prior been in bankruptcy and [he] felt that it was too quick for them to be in a bankruptcy” again. Id. In other words, Smith, despite being a non-lawyer, reached a legal conclusion that the John-sons were ineligible to file for bankruptcy in May of 2004. Second, Smith testified that his “guard went up” due to McCartney’s rude and gruff demeanor. Id. According to Smith, when he began questioning McCartney about the information he had provided, McCartney’s “voice got louder” and McCartney became upset. Id. Smith also noted that McCartney “did not offer to fax [him] a notice that [the John-sons] were in bankruptcy or anything of the meeting.” Id.
The bankruptcy court concluded, in assessing this testimony, that, even assuming McCartney was “rude and gruff’ as asserted by Smith, “M & M had a responsibility to investigate further if it seemed Mr. McCartney [the Johnsons’ attorney] was making false representations.... ” Id. at 54. In my view, this conclusion is entirely reasonable. To the extent that Smith questioned McCartney’s veracity, either due to McCartney’s demeanor or to Smith’s own faulty legal reasoning, Smith could and should have taken reasonable steps to investigate Smith’s assertions.
In taking issue with the district court’s finding and related conclusion, the concurring/dissenting opinion suggests that Smith in fact attempted to make further inquiry “by asking counsel to fax him the cover sheet of the Johnsons’ bankruptcy petition,” but that Smith’s request “was rebuffed....” Cone, at 1178. Importantly, however, the bankruptcy court made no such finding. Moreover, Smith’s own testimony on this point, which amounts to a single sentence, is ambiguous: “Nor did he [McCartney] offer to fax me any proof and when I challenged him on that, he got extremely upset.” App. at 171. Because it is well-established that it is not the function of an appellate court “to decide factual issues de novo,” Zenith Radio Corp. v. Hazeltine Research, Inc., 395 U.S. 100, 123, 89 S.Ct. 1562, 23 L.Ed.2d 129 (1969), it would be improper for us to find that Smith asked McCartney to fax him the cover sheet of the bankruptcy petition, or that McCartney refused to do so.